**Conney L. DAVIS, Appellant (Plaintiff),**

v.

**WYOMING MEDICAL CENTER, INC., a Wyoming corporation, Appellee (Defendant).**

**No. 96–207.**

Supreme Court of Wyoming.

March 18, 1997.

courts which have ruled on the issue. *See Deutschendorf v. People,* 920 P.2d 53, 61 n. 4 (Colo. 1996).

Mark W. Gifford of Gifford & Bonner, Casper, for appellant.

Mark L. Carman of Williams, Porter, Day & Neville, P.C., Casper, for appellee.

Before TAYLOR, C.J., and THOMAS, MACY, GOLDEN and LEHMAN, JJ.

GOLDEN, Justice.

When appellee Wyoming Medical Center, Inc. (WMC) of Casper, without warning or reason terminated the employment of appellant Conney Davis (Davis), a surgical technologist, Davis sued WMC for wrongful termination, asserting claims of breach of contract and promissory estoppel. The district court ruled that WMC's written disclaimers as a matter of law defeated Davis' claim of job security and granted WMC's motion for summary judgment. Davis appeals.

We affirm the ruling of the district court.

Davis presents one issue for our review:

Do the materials submitted to the district court on Appellee's motion for summary judgment show the existence of any genuine issue of material fact as to the nature of Appellant's employment?

WMC states the issues to be:

Was the trial court correct in finding that the Appellant was an employee at-will and remained so until the point in time she was discharged from her employment?

Was the trial court correct in ruling that the Appellant did not establish a cause of action for promissory estoppel?

## FACTS

In order to earn her applied science degree in surgical technology from Central Wyoming College in Riverton, Davis served a 600–hour internship without pay at WMC. At the end of that internship, Davis was urged to apply for and was offered one of three surgical technologist positions at WMC. On April 5, 1995, Davis completed a WMC job application form that included an at-will employment disclaimer. On April 17, 1995, she completed a WMC job offer detail agreement which she contends obligated her to work for WMC for a minimum of one year and obligated WMC to employ her for at

least one year as long as she performed satisfactorily. According to Davis, demand for surgical technologists is high around the country and her employment options outside of Casper were numerous, but she accepted WMC's offer because it included job security. Davis began working for WMC one week later. WMC earlier had offered Davis relocation assistance of $500.00 and, shortly after she moved, Davis accepted the money and signed an agreement committing to work one year. Davis attended a WMC new employee orientation meeting and was given an employee handbook containing a disclaimer. She was required to sign a separate sheet acknowledging receipt of the handbook and which detailed a disclaimer. In July of 1995, three months after beginning her employment, her supervisor evaluated Davis' performance and suggested areas of improvement. Davis received feedback one month later that she had improved and should continue her improvement.

Davis purchased a home on a contract which required she reside there for a minimum of two years and began extensive remodeling to the residence. On October 13, 1995, WMC terminated her employment. When Davis asked for a reason, WMC replied it did not have to give her a reason for the termination. Because WMC is the only employer of surgical technologists in Casper, Davis is now forced to take jobs outside her professional field at lower pay.

Davis filed suit for breach of contract and promissory estoppel alleging WMC had engaged in a course of conduct which created an understanding that she had job security. The district court ruled that the disclaimers were sufficient as a matter of law to prevent WMC's conduct from implying an employment contract containing a job security provision or creating a claim for promissory estoppel. The district court granted summary judgment to WMC and this appeal followed.

## DISCUSSION

Under Wyoming law, it is well-settled that employment for an indefinite time is presumed to be a contract for at-will employment which either party can terminate at any time for any or no reason. *Mobil Coal Producing, Inc. v. Parks,* 704 P.2d 702, 704 (Wyo.1985). A subsequent express contract or an implied in fact contract can defeat the at-will presumption. *Wilder v. Cody Country Chamber of Commerce,* 868 P.2d 211, 217 (Wyo.1994); *Lincoln v. Wackenhut Corp.,* 867 P.2d 701, 703 (Wyo.1994). Generally, it is a systematic discipline procedure or other language in an employee handbook implying termination may be for cause only which will defeat the rebuttable presumption that employment is at will. *Lincoln,* 867 P.2d at 703.

In this case, Davis concedes the effectiveness of the disclaimers issued to and acknowledged by her. She contends, however, that WMC's course of dealing with her negated the effect of these disclaimers and created a genuine issue of material fact as to whether she had an implied contract for employment security. Relying upon *McDonald v. Mobil Coal Producing, Inc.,* 820 P.2d 986, 990–991 (Wyo.1991) (*McDonald II*), she claims that WMC's course of dealing included the following manifestations of assent to an employment relationship which could be terminated only for cause: 1) the job offer detail agreement, 2) the relocation expense assistance agreement, and 3) the verbal assurances she received as part of her performance evaluations.

In determining whether WMC has made objective manifestations of assent to an employment contract containing a job security provision, our analysis must figure in the effect of the disclaimers, the provisions of the documents issued to Davis, and WMC's course of dealing with Davis. *McDonald II,* 820 P.2d at 990; 1 HENRY H. PERRITT, JR., EMPLOYEE DISMISSAL LAW AND PRACTICE § 4:13, at 283 (3d ed. 1992) (It should make no difference whether the statements are contained in a handbook, a policy, or some other form). We hold that the job offer detail agreement and the relocation expense assistance agreement did not require a disclaimer because they did not supply terms for an implied in fact contract. We also hold that the performance evaluations conducted according to the handbook were validly disclaimed by WMC causing any reliance by Davis on her supervisor's verbal representa-

tions during the performance evaluations to be unreasonable as a matter of law. Based upon our recent decision in *Loghry v. Unicover Corp.*, 927 P.2d 706 (Wyo.1996) (*Loghry II*), we hold the disclaimers are effective against Davis' claim of promissory estoppel.

*Standard of Review*

Our review of a grant of summary judgment is the same as the district court. The movant has the burden of clearly demonstrating that there are no genuine issues as to any material fact and the movant is entitled to judgment as a matter of law. *Loghry II*, 927 P.2d at 709. Once a prima facie showing is made, the burden shifts to the party opposing the motion to present specific facts showing that a genuine issue of material fact does exist. *Clark v. Industrial Co. of Steamboat Springs, Inc.*, 818 P.2d 626, 627 (Wyo.1991). We examine the record from the vantage point most favorable to the party opposing the motion and give that party the benefit of all favorable inferences which may fairly be drawn from the record. *Id.*

*Agreements*

Davis contends that the job offer detail agreement caused her to understand that she had a contract for at least one year or more. She states it contained the following:

1. Offered a full-time position as an OR tech, to work shifts.
2. Offered pay of $8.60 per hour, with annual income of $17,880 based upon 2080 hours per year.
3. Indication that the director of surgical services had approved the offer.
4. Offered $500.00 relocation assistance which she initially declined.
5. Statement that she would not receive a signing bonus.
6. Dates to obtain a physical examination and begin employment.
7. Date to attend new employee orientation.
8. This language immediately above the signatures of the "HR/Recruitment" representative and Davis stated:

"Signing hereunder signifies your acceptance of the above stated information and serves as a binding agreement between New Employee and Wyoming Medical Center."

■ "[A] person does not have tenure in employment unless such tenure is established by statute or by contract or by rules and regulations pursuant to statute or by rules and regulations having the force of a contract." *Mobil Coal Producing, Inc. v. Parks*, 704 P.2d 702, 704 (Wyo.1985). This agreement set forth the hours of work, pay scale, and dates for a physical examination, beginning employment and attending orientation. Limited to these subjects, the language that this is "a binding agreement" must be interpreted as giving Davis an enforceable agreement to receive employment for a specific position at a specific rate of pay and begin her employment on a certain date. It is our general rule that a hiring at so much a day, week, month, or year, no time being specified, is an indefinite hiring. *Allen v. Safeway Stores, Inc.*, 699 P.2d 277, 282 (Wyo.1985). The agreement did not address employment for a definite period or contain any language changing WMC's unfettered right to discharge at any time and without cause. *Mobil Coal*, 704 P.2d at 707. No ambiguity is presented which requires reversal of the summary judgment.

Our analysis and conclusion regarding the effect of the relocation assistance agreement are the same. It states in relevant part:

I, Conney L. Davis, ... (Participant), ... have accepted $500.00 from the hospital ..., to assist in financing Participant's move to Casper, Wyoming.

Participant agrees to work no less than 2080 hours in consideration of this assistance.... Participant agrees that if employment terminates for any reason other than Participant's death, before amassing 2080 hours I will be in default of this agreement and I shall repay the amount in full.

\* \* \* \* \* \*

■ The language obligates Davis to either work for one year or to repay the relocation assistance. In exchange, she received $500.00. The consideration exchanged by the parties does not include job security

or her assurance that she would not resign in less than a year and is, therefore, not an agreement for employment for one year and does not alter WMC's unfettered right to discharge at any time and without cause. *Mobil Coal,* 704 P.2d at 707. Reversal of the summary judgment is not required.

*Effectiveness of Disclaimers*

Davis also contends that the verbal representation she received during her performance evaluations led her to believe that she would not be terminated without cause. WMC contends that the disclaimers issued to and acknowledged by her made her belief unreasonable as a matter of law.

 "When properly drafted, a sufficient disclaimer constitutes an express statement in the employment application and subsequent relevant documents, such as an employee handbook, that places the employee on notice that general statements or conduct do not promise employment security and are not to be relied upon by the employee." *Lincoln,* 867 P.2d at 703. "A conspicuous and unambiguous disclaimer would then make any reliance on the subsequent statements of the employer unreasonable." *Id.* To determine if a disclaimer is conspicuous and unambiguous as a matter of law, a reviewing court considers prominence, placement, and language. *Id.* at 703–04.

At hiring, Davis completed a job application form with a disclaimer. The disclaimer is on the second page of the form, is in the same size type as the rest of the application form but is in boldface and enclosed in a box. It reads as follows:

> **I understand that my employment and compensation with Wyoming Medical Center can be terminated, with or without cause, and with or without notice, at any time, at the option of either the company or myself. I also understand that an employee handbook is not an employment agreement, either expressed or implied, and that no employee or manager of Wyoming Medical Center except the Director of Human Resources has any authority to enter into any agreement for employment for any spec-**
> **ified period of time, or to make any agreement contrary to the foregoing.**

Davis received a copy of the employee handbook several weeks after she began her employment. She was required to sign a receipt form for the handbook. The receipt was separate from the handbook and stated a disclaimer which reads as follows:

> I understand that my employment and compensation with Wyoming Medical Center can be terminated, with or without cause, and with or without notice at any time, at the option of either the company or myself. I also understand that this employee handbook is not an employment agreement, either expressed or implied, and that no employee or manager of Wyoming Medical Center except the Vice President of Human Resources has any authority to enter into any agreement for employment for any specified period of time, or to make any agreement contrary to the foregoing.

> I hereby acknowledge receipt of a copy of the Wyoming Medical Center employee Handbook. I understand these policies are subject to change by management, unilaterally and without notice.

The handbook also contained a disclaimer on the first page that is set out in bold, capital type and states:

> **THIS HANDBOOK IS INTENDED AS A GUIDE FOR THE EFFICIENT AND PROFESSIONAL PERFORMANCE OF YOUR JOB. NOTHING HEREIN CONTAINED SHALL BE CONSTRUCTED TO BE A CONTRACT BETWEEN THE EMPLOYER AND THE EMPLOYEE. ADDITIONALLY, THIS HANDBOOK IS NOT TO BE CONSTRUCTED BY ANY EMPLOYEE AS CONTAINING BINDING TERMS AND CONDITIONS OF EMPLOYMENT. THE COMPANY RETAINS THE ABSOLUTE RIGHT TO TERMINATE ANY EMPLOYEE, AT ANY TIME, WITH OR WITHOUT GOOD CAUSE. MANAGEMENT RETAINS THE RIGHT TO CHANGE THE CONTENTS OF THIS HANDBOOK AS IT DEEMS NECESSARY, WITH OR WITHOUT NOTICE.**

██ These disclaimers are conspicuous and unambiguous as a matter of law because the text of the disclaimers is prominent; the placement of the disclaimers is such that a reasonable person ought to notice them; the language disclaiming the formation of any implied in fact contract of employment is sufficiently unambiguous to constitute an effective notice to a reasonable person that no promises modifying the existing contract for employment at will are offered; and finally, the disclaimer preserves WMC's right to unilaterally without notice alter the language of the handbook. *Lincoln,* 867 P.2d at 704–705. WMC remained free to terminate Davis' employment without cause and without breaching any contract of employment. Davis could not reasonably believe that anyone other than the vice-president or director of human resources could assure her that she had employment security regardless of what was said to her during performance evaluations. *Id.* We affirm summary judgment on the issue of breach of contract.

*Promissory Estoppel*

Davis contends that through the use of the agreements and her supervisor's verbal representations discussed above, WMC sought to create the understanding that the parties were mutually bound by the commitment of employment for one year, and thereafter, for so long as Davis performed satisfactorily. She contends that she relied on this promise to her detriment by purchasing a home which required a minimum two-year residency and has suffered damages because she must accept low-paying positions while she fulfills the residency requirement. Assuming without deciding that these contentions meet the elements of promissory estoppel, we will apply the principles established in *Loghry II,* 927 P.2d at 711.

██ To date, this Court has not recognized promissory estoppel as an exception to the at-will employment doctrine. *Garcia v. UniWyo Federal Credit Union,* 920 P.2d 642, 647 (Wyo.1996). We recently decided that when an at-will employee presents a promissory estoppel claim, we will give effect to any valid disclaimers, instead of deciding under our equitable powers. *Loghry II,* 927

P.2d at 711. A valid disclaimer is fair notice to employees of what can be expected from the employer. WMC's disclaimers required employment status modification by a director or vice-president of Human Resources. By this reservation, WMC clearly intended to protect itself from job security claims based upon oral representations made to employees. *Id.* Disclaimer provisions are enforceable against promissory estoppel claims. *Id.* Promissory estoppel requires the party invoking the doctrine to have acted reasonably in justifiable reliance on the promise that was made. *Id.*

██ Because Davis has acknowledged that she knew the content of the disclaimers, we must decide that she was informed that statements to the contrary could not alter her at-will status and she could not then reasonably rely on any subsequent understanding created by the supervisor that she would be employed as long as her performance was satisfactory. Because of the specific disclaimer language, promissory estoppel is not available to Davis. *Id.*

**CONCLUSION**

██ A course of dealing which furnished this employee a job offer detail agreement, a relocation assistance agreement, and verbal encouragement during performance evaluations did not create an implied in fact contract requiring that Davis' employment be terminated only for cause. The written documents did not specify employment for a definite period and did not contain language which could be construed as fettering the employer's right to discharge without cause and at any time. The verbal representations were validly disclaimed and such disclaimers were effective against breach of contract and promissory estoppel claims. The order of the district court is affirmed.