ARCH OF WYOMING, INC., a Delaware Corporation, Appellant (Defendant),

v.

J. Gilbert SISNEROS, Appellee (Plaintiff).

No. 98–63.

Supreme Court of Wyoming.

Jan. 25, 1999.

Bruce A. Salzburg of Herschler, Freudenthal, Salzburg, Bonds & Zerga, P.C., Cheyenne, for Appellant.

Walter Urbigkit of Frotier Law Center, Cheyenne, for Appellee.

Before LEHMAN, C.J., and THOMAS, MACY, GOLDEN and TAYLOR,* JJ.

MACY, Justice.

Appellant Arch of Wyoming, Inc. appeals from the judgment which was entered after the jury returned a verdict in favor of Appellee J. Gilbert Sisneros on his claim for breach of an employment contract.

We affirm.

## ISSUE

Arch presents a single issue on appeal:

When an employer promulgates an employment handbook, reserving the right to unilaterally modify the terms of the handbook, must the reservation itself be "conspicuous" in order to be effective?

## FACTS

Arch hired Sisneros in June 1989 to operate heavy equipment in its Medicine Bow mine. In August 1989, Arch gave Sisneros a copy of its employee handbook (the original handbook). The last page of the original handbook stated in part:

In writing this handbook, management has tried to avoid legal words and phrases as much as possible. It was written for our employees as a matter of information only and is not to be construed as a contract between Arch of Wyoming—Medicine Bow Mine and its employees. New situations develop constantly, and it is to be understood that the Company reserves the right to change, suspend, or cancel all or any part of this handbook as circumstances may require.

The original handbook also contained provisions relating to reductions in force and subsequent rehires of employees who were laid off because of a reduction in force.

* Retired November 2, 1998.

In 1991, Arch revised its handbook (the revised handbook). Sisneros received a copy of that handbook on May 14, 1991. The disclaimer language was moved to the first page of the revised handbook, and the reduction-in-force provision was changed slightly. Because of changes in the coal market, Arch decided to reduce the number of its employees. Sisneros was laid off from his job in October 1991 as part of the reduction in force.

On July 12, 1995, Sisneros filed a complaint against Arch, stating two causes of action: (1) breach of an implied contract for employment created by Arch's handbook; and (2) breach of the implied covenant of good faith and fair dealing. Arch filed a motion for a summary judgment on both of Sisneros' claims. The trial court granted Arch's motion on Sisneros' claim for breach of the implied covenant of good faith and fair dealing. The trial court denied Arch's motion on Sisneros' claim for breach of the implied employment contract. Specifically, the trial court held that the disclaimer in the original handbook was not sufficient to preclude the formation of a contract between the parties for continued employment. The trial court also held that, although the disclaimer in the revised handbook was sufficiently conspicuous, Arch was required to provide additional consideration to its employees if it unilaterally revised the original handbook. The trial court concluded, therefore, that material questions of fact existed on Sisneros' breach-of-contract claim.

When the trial court issued its summary judgment decision, *Brodie v. General Chemical Corporation*, 934 P.2d 1263 (Wyo.1997), was pending before the Wyoming Supreme Court. The parties believed that the issues in *Brodie* were similar to the issues in their case and moved to have their case stayed until this Court decided *Brodie*. After we rendered our decision in *Brodie*, Arch renewed its motion for a summary judgment on Sisneros' claim for breach of the employment contract. The trial court denied Arch's renewed motion for a summary judgment.

The matter was tried to a jury in December 1997. The trial court instructed the jury that, as a matter of law, the original hand-book created an employment contract between the parties. The jury returned a special verdict, finding that Arch breached its contract with Sisneros by laying him off but that it did not breach the contract when it failed to rehire him. The jury awarded Sisneros $70,000 in damages. The trial court entered a judgment on the jury's verdict, and Arch appealed to the Wyoming Supreme Court.

## DISCUSSION

Arch reserved the right to "change, suspend, or cancel all or any part of [the original] handbook as circumstances may require." It argued to the trial court that this reservation allowed it to modify the handbook without providing separate consideration to its employees. The trial court responded to Arch's argument by stating: "The fact that the provision concerning reservation of rights was inconspicuous negates the argument that the provision, by itself, gives the employer the right to unilaterally change the terms of the contractual relationship." Arch contends on appeal that the reservation language did not have to be conspicuous to be effective.

 The salient facts in this case are not in dispute, and Arch's issue presents a narrow question of law. We review issues of law *de novo*. *Anderson v. Bommer*, 926 P.2d 959, 961 (Wyo.1996). In Wyoming, employment relationships are presumed to be at-will. *Loghry v. Unicover Corporation*, 878 P.2d 510, 512 (Wyo.1994); *Sanchez v. Life Care Centers of America, Inc.*, 855 P.2d 1256, 1257 (Wyo.1993). The parties can, however, modify the presumption that employment is at-will through an express or implied agreement. *Brodie*, 934 P.2d at 1265; *Davis v. Wyoming Medical Center, Inc.*, 934 P.2d 1246, 1249 (Wyo.1997). "An employee handbook may constitute an implied contract if it intends to create an expectation that employment will not be terminated except for cause." *Jewell v. North Big Horn Hospital District*, 953 P.2d 135, 137 (Wyo.1998). *See also Lincoln v. Wackenhut Corporation*, 867 P.2d 701, 703 (Wyo.1994). An employer may, however, avoid the formation of an implied contract for continued employment by includ-

ing a conspicuous and unambiguous disclaimer in its handbook. *Lincoln*, 867 P.2d at 703.

We determine as a matter of law whether or not a disclaimer is conspicuous and unambiguous. *McDonald v. Mobil Coal Producing, Inc.*, 820 P.2d 986, 988 (Wyo. 1991). In making that determination, we consider the prominence of the text of the disclaimer and the placement of the disclaimer in relation to the other text in the handbook. *Lincoln*, 867 P.2d at 703–05. We also construe the language of the disclaimer to determine whether it clearly stated the employer's intention to retain at-will employment and to disclaim the formation of a contract for continued employment. 867 P.2d at 704–05. We place particular emphasis on whether or not the employer reserved the right to alter the language of the handbook. *Id.; Davis*, 934 P.2d at 1252.

Under certain conditions, an employer can modify its employee handbook if it previously included language in the handbook which reserved its right to make unilateral modifications. *Brodie*, 934 P.2d at 1266; *see also Lincoln*, 867 P.2d at 705. On the basis of this rationale, an employer can reinstate the at-will employment status by adding a proper disclaimer to a handbook which ostensibly provides job security to its employees. *Jewell*, 953 P.2d at 138; *Brodie*, 934 P.2d at 1268. The employer generally must provide additional consideration to its employees when it makes such a revision. *Id.*

In *Lincoln*, we recognized that an employer's reservation of the right to alter the language of a handbook can be included in a disclaimer. 867 P.2d at 705; *see also Woolley v. Hoffmann–La.Roche, Inc.*, 99 N.J. 284, 491 A.2d 1257, 1270, *modified*, 101 N.J. 10, 499 A.2d 515 (N.J.1985), *quoted with approval in McDonald*, 820 P.2d at 989. We require that disclaimers be conspicuous so that employers are prevented from promulgating handbooks which imply job security while they are reserving the right to deviate from the handbooks at their own caprice. *Sanchez*, 855 P.2d at 1258. Job security is a valuable contractual right, and an employer cannot unilaterally revoke that right without sufficiently informing the employee that it has reserved the option to revise the handbook. *See Brodie*, 934 P.2d at 1268.

Arch states in its brief that, in adopting the revised handbook with the conspicuous disclaimer, it did not "change the nature of the employment relationship from contractual to at-will . . ., it merely made a previously inconspicuous disclaimer conspicuous." We do not agree with Arch's statement. Because the disclaimer was not conspicuous, the original handbook created an employment contract. When Arch revised the handbook to make the disclaimer conspicuous, it obviously attempted to change the nature of its relationship with its employees from contractual to at-will. If we were to allow an employer to deprive its employees of promised job security by relying on an inconspicuous reservation of the right to modify the handbook, we would be undermining the foundation of our employment handbook jurisprudence. We refuse to do that.

We conclude that, if an employer wants to reserve the right to unilaterally modify its handbook, it must make sure that the reservation language is conspicuous and unambiguous. The trial court determined that the reservation in this case was not sufficiently conspicuous, and Arch does not contest that finding.

Affirmed.