# IN THE SUPREME COURT, STATE OF WYOMING

## 2015 WY 9

**OCTOBER TERM, A.D. 2014**

**January 14, 2015**

In Re: Wrongful death action of Jerome C. Knight, by and through his wrongful death personal representative, GARRET KNIGHT,

Appellant
(Plaintiff),

v.

THE ESTATE OF VICTOR McCOY, deceased, and M & M WELDING SERVICES, LLC, a Wyoming Limited Liability Company,

Appellees
(Defendants).

S-14-0099

*Appeal from the District Court of Washakie County*
*The Honorable Robert E. Skar, Judge*

*Representing Appellant:*
John P. Worrall of Worrall and Greear, P.C., Worland, WY.

*Representing Appellee:*
Curtis B. Buchhammer of Buchhammer & Kehl, P.C., Cheyenne, WY.

*Before BURKE, C.J., and HILL, KITE, DAVIS, and FOX, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**HILL,** Justice.

[¶1]    This appeal arises out of a wrongful death action following an automobile accident in which both Jerome Knight (Decedent) and Victor McCoy (McCoy) were killed. Decedent was employed by M&M Welding Services, LLC (M&M), and McCoy was one of the owners of M&M.  McCoy was driving the vehicle when the accident occurred, and Garret Knight (Plaintiff), as Decedent's personal representative, filed a wrongful death action against the Estate of Victor McCoy (the McCoy Estate) and M&M.  The district court granted summary judgment in favor of M&M on grounds of employer immunity under the Wyoming Worker's Compensation Act and summary judgment in favor of the McCoy Estate on grounds of defective service of process, lack of personal jurisdiction, and expiration of the statute of limitations.  We affirm in part and reverse in part.

## ISSUES

[¶2]    Plaintiff states the issues on appeal as follows:

> I.      Did the District Court correctly determine that Worker's Compensation Coverage existed such as to bar any action by the Plaintiff vs. M&M Welding Services, LLC?
> II.     Did the District Court err in granting a Summary Judgment based upon an unsigned Summons which was presented to Kathryn McCoy as the Personal Representative of the Estate of Victor McCoy based upon lack of jurisdiction?
> III.    Did Appellee[s] waive [their] jurisdictional defense by failing to raise [it] in their first W.R.C.P. 12(b) Motion?

## FACTS

[¶3]    On September 29, 2010, Decedent, who had been employed by M&M for only three or four days, accompanied his supervisor McCoy, who was also an owner in M&M, to a work site south of Worland, Wyoming.  At approximately 4:00 p.m., Decedent and McCoy departed from the work site, and with McCoy driving, they headed back to Worland.  At approximately 4:20 p.m., about two miles south of Worland, McCoy crossed the highway's center line and collided head on with an oncoming semi-trailer truck.  Both Decedent and McCoy immediately died of their injuries.  Toxicology tests performed after the accident showed that McCoy was under the influence of a significant amount of methamphetamine at the time of his death.

[¶4]    On August 10, 2012, Katherine McCoy was appointed as Administrator of the McCoy Estate.  On August 21, 2012, Plaintiff filed a wrongful death action against the

1

McCoy Estate and M&M (collectively Defendants). On September 5, 2012, Katherine McCoy was asked to accept service of Plaintiff's complaint and was at that same time provided with a summons, a copy of the complaint, and an acceptance of service document.[1] On September 10, 2012, the acceptance of service bearing Ms. McCoy's signature was filed. The document read, with emphasis in the original:

> **COMES NOW, Katherine McCoy,** and in the above-entitled cause, and hereby accepts and acknowledges service of the Complaint and Summons, and voluntarily enters her appearance on behalf of The Estate of Victor McCoy, Defendant, herein and consents that said cause may be tried forthwith at the convenience of the Court.

[¶5]   On September 19, 2012, Plaintiff filed an amended complaint to specify compliance with Wyo. Stat. Ann. § 27-14-105, which requires notification to the Wyoming Attorney General and the Director of the Wyoming Worker's Compensation Division of any legal action related to an injury for which workers' compensation benefits were paid. On October 1, 2012, Plaintiff served the amended complaint on M&M by serving the amended complaint and a summons on Ashley Morris, the other co-owner of M&M. On October 12, 2012, Plaintiff served the amended complaint on the McCoy Estate by serving the amended complaint and a summons on Katherine McCoy.

[¶6]   On October 15, 2012, Defendants filed their Answer of Defendants to Amended Complaint. Included in Defendants' affirmative defenses, Defendants alleged: process was defective and insufficient as to each Defendant; improper service of process; and lack of personal jurisdiction over either Defendant.

[¶7]   On December 31, 2012, Defendants filed a W.R.C.P. 12(b)(6) motion to dismiss alleging a failure to state a claim upon which relief can be granted. Also on December 31, 2012, Defendants filed a motion for summary judgment. Through the motion to dismiss, Defendants alleged that the McCoy Estate was immune from suit under the Wyoming Worker's Compensation Act. Through the summary judgment motion, Defendants alleged that M&M was immune from suit under the Wyoming Worker's Compensation Act, or alternatively that Plaintiff had elected workers' compensation benefits and was therefore estopped from asserting claims against M&M.

[¶8]   The district court held a hearing on Defendants' motions on May 29, 2013, and on July 24, 2013, the court issued its decision. The court found that M&M was immune from suit under the Wyoming Worker's Compensation Act and granted Defendants'

---

[1] The record contains Ms. McCoy's affidavit, and in that affidavit, Ms. McCoy states that she was asked to accept service of the complaint. The affidavit does not specify who asked Ms. McCoy to accept service, and neither the affidavit nor the record provides any other detail concerning Ms. McCoy's receipt and execution of the acceptance of service.

summary judgment motion as to claims against M&M. The court found that genuine issues remained on the question whether claims against the McCoy Estate were barred by the Worker's Compensation Act and denied Defendants' summary judgment motion as to claims against the McCoy Estate. With respect to Defendants' motion to dismiss claims against the McCoy Estate, the court ruled that

> while it is yet to be determined whether the allegations in Plaintiff's Complaint amount to an intentional act to cause physical harm or injury to the injured employee, the facts as pled in the Complaint give fair notice of the claim to Defendants and are sufficient to withstand a W.R.C.P. 12(b)(6) motion[.]

[¶9]   On August 28, 2013, the McCoy Estate filed a second summary judgment motion. Through its second summary judgment motion, the McCoy Estate alleged that it was entitled to judgment because: 1) Plaintiff named the wrong defendant when it named the McCoy Estate as Defendant (instead of Katherine McCoy, in her capacity as Administrator of the McCoy Estate); 2) process was defective because the summons for the amended complaint was not issued under the seal of the court, was not addressed to the named defendant, and was addressed to Katherine McCoy individually as opposed to in her official capacity as Administrator; and 3) the statute of limitations had expired.[2]

[¶10] The district court heard argument on the McCoy Estate's second summary judgment motion on December 18, 2013, and on January 10, 2014, the court issued an order granting the motion. The court ruled:

> 1.     Plaintiff's naming of the Estate of Victor McCoy as the party-defendant, as opposed to Katherine McCoy in her capacity as the personal representative of that estate, was not fatal and could be remedied through amendment of the caption.
> 2.     The original complaint and amended complaint in this matter are substantively the same and assert the same claim against the Defendant.
> 3.     The summonses that accompanied the complaint and amended complaint were insufficient, did not comply with Rule 4, W.R.C.P., deprive the Court of personal jurisdiction over the Defendant, and are fatal to Plaintiff's claim against Defendant.

---

[2] The McCoy Estate also argued in its second summary judgment motion that the summons served with the original complaint was defective for a number of reasons. It primarily focused, though, on the second summons and amended complaint, contending that the defects in the original summons were rendered moot by the second summons.

4. The Defendant timely raised defenses associated with the insufficiencies of the summonses and personal jurisdiction.

5. The statute of limitations on Plaintiff's claim has expired and there is no savings clause that applies to either toll or extend the applicable statute of limitations.

[¶11] On February 10, 2014, the district court, following Defendants' W.R.C.P. 58 submission of a proposed order, entered its order on Defendants' first summary judgment motion and motion to dismiss. Plaintiff timely appealed the orders granting Defendants' dispositive motions.

## STANDARD OF REVIEW

[¶12] We review orders granting summary judgment using the following well-established standard of review:

> We review a summary judgment in the same light as the district court, using the same materials and following the same standards. We examine the record from the vantage point most favorable to the party opposing the motion, and we give that party the benefit of all favorable inferences that may fairly be drawn from the record. A material fact is one which, if proved, would have the effect of establishing or refuting an essential element of the cause of action or defense asserted by the parties. If the moving party presents supporting summary judgment materials demonstrating no genuine issue of material fact exists, the burden is shifted to the non-moving party to present appropriate supporting materials posing a genuine issue of a material fact for trial. We review a grant of summary judgment deciding a question of law *de novo* and afford no deference to the district court's ruling.

*Meyer v. Miller*, 2014 WY 91, ¶ 15, 330 P.3d 263, 267 (Wyo. 2014) (quoting *Estate of Dahlke ex rel. Jubie v. Dahlke*, 2014 WY 29, ¶ 26, 319 P.3d 116, 123–24 (Wyo. 2014)).

## DISCUSSION

### A. M&M's Employer Immunity

[¶13] The district court found undisputed evidence that M&M employed Decedent and paid workers' compensation premiums on his behalf. Based on those findings, the court concluded that M&M's employer immunity under the Wyoming Worker's Compensation

4

Act barred Plaintiff's action against M&M as a matter of law. Plaintiff contends that a question of fact exists as to whether Decedent was properly included on M&M's payroll at the time of the accident and that the court therefore erred in ruling M&M's employer immunity barred Plaintiff's wrongful death claim. We find no error in the court's ruling on M&M's immunity.

[¶14]  The Wyoming Constitution makes workers' compensation benefits an employee's sole and exclusive remedy against his or her employer:

> The right of each employee to compensation from the [worker's compensation] fund shall be in lieu of and shall take the place of any and all rights of action against any employer contributing as required by law to the fund in favor of any person or persons by reason of the injuries or death.

Wyo. Const. art. 10, § 4; *see also Clark v. Industrial Co. of Steamboat Springs, Inc.*, 818 P.2d 626, 628-29 (Wyo. 1991).

[¶15]  The Wyoming Worker's Compensation Act codifies an employer's immunity as follows:

> (a)  The rights and remedies provided in this act for an employee including any joint employee, and his dependents for injuries incurred in extrahazardous employments are in lieu of all other rights and remedies against any employer and any joint employer making contributions required by this act, or their employees acting within the scope of their employment unless the employees intentionally act to cause physical harm or injury to the injured employee, but do not supersede any rights and remedies available to an employee and his dependents against any other person.
>
> * * * *
>
> (c)  This act does not limit or affect any right or action by any employee and his dependents against an employer for injuries received while employed by the employer when the employer at the time of the injuries has not qualified under this act for the coverage of his eligible employees, or having qualified, has not paid the required premium on an injured employee's earnings within thirty (30) days of the date due. When an employee's employment starts within the same month as the injury, the status of delinquency or not contributing shall not apply until after the regular payroll reporting date.

Wyo. Stat. Ann. § 27-14-104 (LexisNexis 2013).

[¶16] This Court has recognized that an employer's immunity under the Act is absolute regardless of whether the employer's conduct "amounted to culpable negligence or an intentional tort." *Wessel v. Mapco, Inc.*, 752 P.2d 1363, 1367 (Wyo. 1988) (citing *Parker v. Energy Development Co.*, 691 P.2d 981 (Wyo. 1984)). "An entity asserting the defense of immunity under the worker's compensation statute must establish that it is (1) an employer, (2) who pays into the worker's compensation fund, (3) as required by law." *Clark*, 818 P.2d at 629 (citing *Stratman v. Admiral Beverage Corp.*, 760 P.2d 974, 979 (Wyo.1988)).

[¶17] In support of its summary judgment motion, M&M submitted the affidavit of Ashley Morris, one of M&M's co-owners. Ms. Morris attested:

> 2.     On or about August 2, 2010, M&M Welding Services, LLC (hereinafter "M&M"), a Wyoming limited liability company, was formed. I, along with Victor McCoy, were the only members of M&M.
>
> 3.     As a member of M&M, part of my duties included, but were not limited to, doing the bookkeeping and paying bills, procuring worker's compensation for employees of M&M, and reviewing and processing any claims for worker's compensation that were made by M&M employees.
>
> 4.     In late September, Jerome C. Knight became employed by M&M. Jerome C. Knight maintained that employment through the date, and at the time of, his death on September 29, 2010.
>
> 5.     On September 29, 2010, as part of their work duties with M&M, Victor McCoy and Jerome C. Knight were returning to Worland from a work site. On that date, Victor McCoy and Jerome C. Knight were involved in an automobile accident and they both died from injuries that were sustained in the accident.
>
> 6.     From its inception, M&M had a workers' compensation account with Wyoming Workers' Compensation Division. Because Jerome C. Knight began his employment with M&M prior to the workers' compensation reporting date for the month of his hire, which was September of 2010, premium payments to Wyoming's Workers' Compensation Division were not due for him until the following reporting period in October of 2010. From the time of his hire, it was always intended by M&M that Jerome C. Knight, (sic) would be covered by Wyoming's Workers'

Compensation. In fact, it was my understanding that, given the nature of his employment, that M&M was required to procure workers' compensation on Jerome C. Knight.

7. In October of 2010, premium was paid to Wyoming's Workers' Compensation Division for Jerome C. Knight. As part of my duties with M&M, I personally prepared the check and paid that workers' compensation premium from a bank account owned by M&M. As part of my duties with M&M, I also prepared a report of injury for Wyoming's Workers' Compensation Division that pertained to the death of Jerome C. Knight from the September 29, 2010, automobile accident.

8. A representative of Jerome C. Knight thereafter filed a claim for benefits with Wyoming Workers' Compensation Division that consisted of funeral expenses in the amount of $9,638. As part of my duties with M&M, I was made aware of the claim and lodged no objection on behalf of M&M to that claim for benefits. After the worker's compensation claim was presented on behalf of Jerome C. Knight, Wyoming Workers' Compensation Division approved the claim and paid a benefit in the amount of $9,353 for funeral expenses.

9. Attached hereto as Exhibit "1" is a true and correct copy of the "Employer's Monthly Claims Statement" for the month of November 2010 that was received by M&M from Wyoming Workers Safety and Compensation Division. The statement was personally received and reviewed by me as part of my regular duties with M&M. It was, and remains, my understanding that Exhibit "1" is the notice of the final determination by Wyoming's Workers' Compensation Division to pay the funeral expenses of Jerome C. Knight. To my knowledge, the benefit noted in Exhibit "1" was paid by Wyoming's Workers' Compensation Division and no representative of Jerome C. Knight ever rejected payment of that benefit.

[¶18] Ms. Morris' affidavit is evidence that M&M was Decedent's employer and that it paid into the workers' compensation fund for Decedent's coverage as required by law. M&M therefore, through the Morris affidavit, established its immunity under the Worker's Compensation Act. *See Clark*, 818 P.2d at 629. With M&M having met its initial burden of establishing a prima facie case for summary judgment, the burden shifted to Plaintiff to present specific facts and evidence demonstrating that a genuine

7

issue of material fact exists. *See Symons v. Heaton*, 2014 WY 4, ¶ 7, 316 P.3d 1171, 1174 (Wyo. 2014).

[¶19] In responding to M&M's summary judgment motion, Plaintiff did not present evidence that Decedent was not an employee of M&M. Indeed, Plaintiff did not dispute that fact and alleged in both his complaint and amended complaint that Decedent was an employee of M&M. Plaintiff likewise did not present evidence refuting M&M's evidence that it timely paid into the workers' compensation fund for Decedent's coverage. Instead, Plaintiff contends that M&M's payment into the workers' compensation fund was not effective to obtain coverage for Decedent because M&M did not comply with the Act's requirement that an employer submit a true copy of its payroll certifying its employees engaged in extrahazardous employment. On this basis, Plaintiff contends that the district court erred in finding that M&M was entitled to judgment as a matter of law. We disagree.

[¶20] The Act provides as follows concerning an employer's obligation to submit a true and certified payroll:

> Except as provided under subsection (e) of this section, each employer shall forward to the division on forms provided by the division, a true copy of the payroll of his employees engaged in extrahazardous employment during the current calendar month or quarterly reporting period, certified and affirmed by himself or a person having knowledge of the payrolls under penalty of perjury. Payroll reports and monthly payments under this act shall be submitted on or before the last day of the month following the month in which the earnings are paid, unless otherwise provided by rule and regulation of the division.

Wyo. Stat. Ann. § 27-14-202(a) (LexisNexis 2013).

[¶21] Plaintiff contends that M&M did not comply with this requirement because it stopped payment on the paycheck it issued to Decedent, as attested to in Plaintiff's affidavit:

> 3. On or about September 30th, 2010, Ashley Morris, one of the principals of M&M Welding Services, LLC, gave to me a check in excess of $200.00, representing my son's only paycheck from M&M Welding Services, LLC.
> 4. A few days later when I attempted to deposit that check into his bank account, M&M Welding Services

8

had stopped payment on that check. Since that time, despite demand, no remuneration has been made.

[¶22] Plaintiff contends that because M&M stopped payment on Decedent's paycheck, Decedent was not on M&M's payroll and thus any payroll that included Decedent on it would not have been a true payroll. Plaintiff argues that this alleged failure to report an accurate payroll means that M&M could not have lawfully paid into the workers' compensation fund for Decedent's coverage and Decedent therefore had no workers' compensation coverage. We reject Plaintiff's argument because we find that he has failed to present evidence that Decedent was not properly reported on M&M's payroll.

[¶23] The Act defines the term "payroll" to mean "'gross earnings' as defined under paragraph (a)(ix) of this section." Wyo. Stat. Ann. § 27-14-102(a)(xiv) (LexisNexis 2013). "Gross earnings" is then defined to mean "remuneration *payable* for services from any source including commissions, bonuses and cash and excluding tips and gratuities." Wyo. Stat. Ann. § 27-14-102(a)(ix) (LexisNexis 2013) (emphasis added). Importantly, in defining the term "payroll," the Act refers to remuneration payable and not remuneration paid. The Act does not define the term payable, but looking to its dictionary definition, we find that it means the amount "that may, can, or must be paid." Merriam-Webster's Collegiate Dictionary 910 (11th ed. 2007).

[¶24] Plaintiff's evidence showed that M&M stopped payment on the paycheck that it issued to Decedent, but Plaintiff did not present evidence that there was no amount payable to Decedent. There is no dispute that Decedent was an employee of M&M, that Decedent performed work for M&M, that M&M paid into the workers' compensation fund for Decedent's coverage, and that workers' compensation benefits were in fact paid to cover the costs of Decedent's funeral services. Thus, although M&M, for undisclosed reasons, stopped payment on Decedent's paycheck, the unrefuted evidence and undisputed facts show that there were amounts owing Decedent and that Decedent would have properly been included in M&M's payroll. Plaintiff's assertions to the contrary are not supported by evidence and instead require that we speculate that the reason payment on Decedent's paycheck was stopped was because those amounts were not due and owing Decedent. This type of conjecture is insufficient to overcome a summary judgment movant's prima facie case and to establish an issue of material fact:

> The evidence opposing a prima facie case on a motion for summary judgment "must be competent and admissible, lest the rule permitting summary judgments be entirely eviscerated by plaintiffs proceeding to trial on the basis of mere conjecture or wishful speculation." Speculation, conjecture, the suggestion of a possibility, guesses, or even probability, are insufficient to establish an issue of material fact.

9

*Symons*, ¶ 7, 316 P.3d at 1174 (citing *Cook v. Shoshone First Bank*, 2006 WY 13, ¶ 12, 126 P.3d 886, 890 (Wyo. 2006)).

[¶25]  While it is troubling to this Court that amounts owing for Decedent's employment with M&M have apparently not been paid, the Act does not define the term "payroll" based on amounts paid, but rather is based upon amounts payable.  M&M's obligation to issue Decedent's final paycheck is thus a separate issue from the question of its workers' compensation coverage for Decedent.  Because the undisputed facts and unrefuted evidence show that M&M was Decedent's employer and properly paid into the workers' compensation fund for Decedent's coverage, we conclude that the district court properly ruled that Plaintiff's claims against M&M are barred by the Wyoming Worker's Compensation Act.[3]

## B.     Service on McCoy Estate and Statute of Limitations

[¶26]  The district court found that fatal defects in the summons Plaintiff served on the McCoy Estate rendered that service ineffective and left the court without personal jurisdiction over the McCoy Estate.  Because the statute of limitations for Plaintiff's wrongful death claim had expired and service could no longer relate back to the date the complaint was originally filed, the court ruled that the McCoy Estate was entitled to judgment as a matter of law.  Although we agree that Plaintiff's service of process on the McCoy Estate was defective, we find that because the McCoy Estate accepted service, entered its appearance in the action, and consented to the court's trial of the matter, those defects did not affect the court's personal jurisdiction and Plaintiff's action was commenced within time allowed by the wrongful death statute of limitations.

[¶27]  This Court has held that "[a] court does not acquire personal jurisdiction over a party that has not been properly served." *Lundahl v. Gregg*, 2014 WY 110, ¶ 9, 334 P.3d 558, 562 (Wyo. 2014) (citing *Rosty v. Skaj*, 2012 WY 28, ¶ 22, 272 P.3d 947, 955 (Wyo. 2012)).  We have also observed, however, that "when a defendant appears voluntarily, without questioning the court's personal jurisdiction, that appearance is the equivalent of proper service of process." *Lundahl*, ¶ 11, 334 P.2d at 562 (citing *Operation Save Am. v. City of Jackson*, 2012 WY 51, ¶ 54, 275 P.3d 438, 456 (Wyo. 2012)); *see also In re Adoption of MSVW*, 965 P.2d 1158, 1162 (Wyo. 1998).  We have explained:

> In order for a court to acquire jurisdiction over a defendant, that defendant must be properly served or must "voluntarily" appear.  A judgment entered without the court

---

[3] Because we find that Plaintiff has failed to present evidence that Decedent was not properly reported on M&M's payroll, we need not and do not address whether an inaccuracy in an employer's payroll report is a discrepancy that would necessarily undermine an employer's workers' compensation coverage and immunity under the Act.

having jurisdiction is null and void. A defendant may waive his right to challenge a court's jurisdiction. Such a challenge should be made at the defendant's soonest opportunity. Failure to timely broach the issue with the court may result in waiver of that defense. Most importantly for this case, where a defendant appears voluntarily, without questioning the court's personal jurisdiction, that appearance is the equivalent of proper service of process. *Matter of Adoption of MSVW*, 965 P.2d 1158, 1162 (Wyo. 1998); and *see Ostermiller v. Spurr*, 968 P.2d 940, 943 (Wyo. 1998) (consent to court's jurisdiction for one purpose may result in court's jurisdiction for any related purpose).

*Operation Save Am.*, ¶ 54, 275 P.3d 455-56 (quoting *JAG v. State Dep't of Family Servs.*, 2002 WY 158, ¶ 13, 56 P.3d 1016, 1019 (Wyo. 2002)); *see also Walton v. State ex rel. Wood*, 2002 WY 108, ¶ 10, 50 P.3d 693, 697 (Wyo. 2002) (failure to question personal jurisdiction at earliest opportunity deemed a waiver).

[¶28] The McCoy Estate executed an acceptance of service through its estate administrator, and that acceptance of service was the McCoy Estate's first appearance in the action. The document did not challenge the district court's personal jurisdiction over the McCoy Estate. Instead, through the document, the estate administrator accepted and acknowledged service of the complaint and summons, "voluntarily enter[ed] her appearance on behalf of [the McCoy Estate]" and consented "that said cause may be tried forthwith at the convenience of the Court." Although Defendants subsequently filed an answer in which they asserted affirmative defenses alleging defects in the service of process and challenging the court's personal jurisdiction, the McCoy Estate had already waived those objections through its acceptance of service.

[¶29] The McCoy Estate contends that its acceptance of service should be disregarded because it is not in the form required by W.R.C.P. 4(o) and had acceptance of service been in the required form, it would not have resulted in a waiver of objections to defects in process or service of process. While the acceptance of service was not in the form required by W.R.C.P. 4(o), we do not agree that that changes the outcome in this case.

[¶30] W.R.C.P. specifies when an action is deemed commenced for purposes of applying a statute of limitations. It provides:

> For purposes of statutes of limitation, an action shall be deemed commenced on the date of filing the complaint as to each defendant, if service is made on the defendant or on a co-defendant who is a joint contractor or otherwise united in interest with the defendant, within 60 days after the filing of

11

the complaint. If such service is not made within 60 days the action shall be deemed commenced on the date when service is made. ***The voluntary waiver, acceptance or acknowledgment of service, or appearance by a defendant shall be the same as personal service on the date when such waiver, acceptance, acknowledgment or appearance is made***. When service is made by publication, the action shall be deemed commenced on the date of the first publication.

W.R.C.P. 3(b) (LexisNexis 2014) (emphasis added).

[¶31] By its plain terms, W.R.C.P. 3(b) does not limit those acts that will be deemed the same as personal service to a W.R.C.P. 4(o) waiver of service. The rule identifies waiver, acceptance, acknowledgment or appearance as the equivalents of personal service, and the rule's use of the disjunctive "or" means any one of these will suffice to commence the action. *See Olivas v. State ex rel. Wyo. Workers' Safety and Compensation Div.*, 2006 WY 29, ¶ 15, 130 P.3d 476, 484 (Wyo. 2006) (quoting *Basin Elec. Power Coop. v. State Bd. of Control*, 578 P.2d 557, 566 (Wyo. 1978)) ("[T]he word 'or' is usually used in the disjunctive sense, and 'when two [or more] clauses are expressed in the disjunctive, this generally indicates alternatives, requiring separate treatment.'"). Thus, the McCoy Estate's acceptance of service, which was an acceptance, an acknowledgement, and an appearance, sufficed to be the equivalent of personal service and caused the action to commence before the statute of limitations expired.

[¶32] We also note that in terms of waiving objections to defects in process or service of process, the acceptance of service in this case was not functionally different from a W.R.C.P. 4(o) waiver. W.R.C.P. 4(o)(1) provides that a "defendant who waives service of a summons does not thereby waive any objection to the venue or to the jurisdiction of the court over the person of the defendant." W.R.C.P. Form 1-B, which is the waiver of service form, clarifies, however, that "[a] party who waives service of the summons retains all defenses and objections (except any relating to the summons or to the service of the summons), and may later object to the jurisdiction of the court or to the place where the action has been brought." The Practice Commentary to the federal waiver of service rule explains:

> Subdivision (b) of Rule 12 of the Federal Rules of Civil Procedure has seven numbered grounds of objection. Of the seven, two are waived when the request for waiver is honored by the defendant: the objections numbered 4, on insufficiency of process, and 5, on insufficiency of service of process. Since there is no summons in the picture at all when the waiver procedure is fulfilled, objection 4 has nothing to operate on, and dispensing with formal service is of course

12

the very purpose of the waiver procedure, thus taking objection 5 out of the picture as well.

David D. Siegal, *Practice Commentary* C4-16, 28 U.S.C.A. Fed.R.Civ.P. 4 (2014).

[¶33]  The McCoy Estate contended that the acceptance of service should be disregarded because it was not in the form required for a W.R.C.P. 4(o) waiver of service, but it did not otherwise assert that there was any impropriety in the presentation of the acceptance of service document to the McCoy Estate or in the estate administrator's execution of the document.  We thus conclude, given that the acceptance of service was not required to be in the form of a W.R.C.P. 4(o) waiver of service to operate as the equivalent of personal service, that with the filing of the acceptance of service, the wrongful death action commenced.  Because the McCoy Estate's acceptance of service occurred before the expiration of the statute of limitations, Plaintiff's action against the McCoy Estate was not barred by the statute of limitations.

## CONCLUSION

[¶34]  The district court correctly concluded that M&M's employer immunity under the Wyoming Worker's Compensation Act barred Plaintiff's wrongful death action against M&M as a matter of law.  The court erred, however, in concluding that the statute of limitations barred Plaintiff's action against the McCoy Estate.  We thus affirm in part and reverse in part.